UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

VADO C.G.,

            Petitioner,

      v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY, et al.,[1]

           Respondents.

No. 1:25-cv-01858-TLN-CSK

**ORDER**

This matter is before the Court on Petitioner Vado C.G.'s ("Petitioner") *pro se* request for injunctive relief (ECF No. 1), which the Court construed as a motion for temporary restraining order ("TRO") (ECF No. 5).[2]  Respondents filed an opposition.  (ECF No. 8.)  Petitioner replied.[3] (ECF No. 12.)  For the reasons set forth below, the Court issues a TRO requiring Respondents to IMMEDIATELY RELEASE Petitioner.  Respondents are further ORDERED TO SHOW CAUSE why the Court should not grant the Petition for Writ of Habeas Corpus and enter judgment in favor of Petitioner.

[1]  Respondents ask the Court, via footnote, to strike and dismiss all respondents other than the official with custody of Petitioner.  (ECF No. 8 at 1 n.1.)  Petitioner opposes the request. (ECF No. 12 at 1 n.1.)  The request, as made, is improper.  If Respondents seek to dismiss other respondents from this action, they must do so in a properly noticed motion.  *See Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025) ("[A] request for affirmative relief is not proper when raised for the first time in an opposition.").

[2]  Since Petitioner's initial filing of his habeas petition, the Court appointed counsel who is now enrolled in this case and filed a reply on behalf of Petitioner.  (ECF Nos. 5, 11.)

[3]  Petitioner filed a Traverse, in response to Respondents' opposition, which the Court construes as a reply on the motion for temporary restraining order.  (ECF No. 12.)

1

## I.   FACTUAL BACKGROUND

Petitioner is a citizen of Nicaragua who has been residing in the United States for over 22 years. (ECF No. 12-1 at 1.)  In 2004, Petitioner came to the United States fearing persecution in his home country. (*Id.*)  Petitioner later encountered immigration authorities who processed Petitioner and released him on bond. (*Id.* at 2.)  In 2019, an immigration judge ordered Petitioner removed but granted Petitioner withholding of removal. (*Id.* at 2.)  That order was amended in December 2025 to identify Nicaragua as the relevant country. (ECF No. 8 at 2.)

For the last 22 years, Petitioner has built a life in the United States. (ECF No. 12-1 at 1.) He has U.S. citizen children, a fiancé, and he was gainfully employed as an owner of his own business for 15 years. (*Id.*)  Petitioner is also pursuing U-visa relief, which is pending. (ECF No. 1 at 5.)  Petitioner asserts he has not violated the conditions of his release. (ECF No. 1 at 5.) Respondents state that Petitioner was convicted of criminal offenses between 2019 and 2024. (ECF No. 8 at 2.)

On November 26, 2025, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner without a notice, warrant, or explanation. (*See* ECF No. 12-1 at 2.)  An ICE official called Petitioner, posing as a potential customer, to arrange a time to purchase Petitioner's truck. (*Id.*)  When Petitioner arrived, five plainclothes ICE officials with masks arrested Petitioner. (*Id.*) When Petitioner asked why he was being arrested, ICE officials told him they had an "order," but no such order was ever provided to Petitioner. (*Id.*)

Petitioner has been detained for over three months without a custody determination or bond hearing. (*Id.* at 2.)  He describes experiencing mental anguish and physical pain as a result of the conditions of his detention. (*Id.* at 3.)  Respondents are attempting to remove Petitioner to a third-country where he has no ties and he fears what might happen to him. (*Id.* at 2.)  On December 2, 2025, Petitioner was served with a third-country removal form. (ECF No. 8-3.) Petitioner asserts he does not understand what is happening with his immigration detention and potential removal; it has not been explained to him. (*Id.*)  Petitioner challenges the lawfulness of his civil detention and seeks immediate release. (*See* ECF No. 1.)

///

## II.   STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

## III.   ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

### A.   Likelihood of Success on the Merits

Petitioner establishes a likelihood of success on his claim that his detention violates the Fifth Amendment Due Process Clause.  The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the

3

Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i.   Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom after he was initially released from immigration custody on bond.[4] Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. Petitioner's liberty interest has been strengthened over time. *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in

---

[4]    Respondents state that ICE cancelled Petitioner's bond on October 14, 2024. (ECF No. 8 at 2.) However, on this record — absent explanation, argument, or analysis — the Court has no basis to believe that bond cancellation has any bearing on Petitioner's liberty interest. Because Respondents did not re-detain Petitioner until over 14 months after bond cancellation, the Court does not assume bond cancellation and detention are related. In any event, Petitioner is still entitled to due process in the revocation of his liberty.

4

allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest). Thus, Petitioner has a clear interest in his continued freedom.

Respondents' sole argument in opposition to a TRO is that, at the time of Petitioner's arrest, he was subject to mandatory detention under 8 U.S.C. § 1225(b) because he is an "applicant for admission." (ECF No. 8 at 5–8.) This Court has now ruled on this same issue countless times and courts throughout the Ninth Circuit have overwhelmingly rejected Respondents' legal position to find the government's re-classification of individuals under the mandatory detention policy unlawful. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025) (issuing vacatur of unlawful DHS mandatory detention policy for a nationwide certified class).

As this Court has previously noted, it will not reconsider its position absent new argument, case law, or distinguishable facts. Respondents provide no such grounds for reconsideration. (*See* ECF No. 8.) Thus, at the time of Petitioner's detention, Petitioner was not an "applicant for admission" subject to mandatory detention under § 1225(b)(2). Petitioner was instead subject to § 1226(a) and was entitled to the process that statute requires, including a bond hearing at a minimum.[5] Accordingly, Petitioner has a protected liberty interest in his continued freedom protected by the Due Process Clause.

*ii. Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any,

---

[5] The fact that Petitioner had an order of removal (and withholding of removal) does not alter this Court's finding. Respondents assert that Petitioner's order of removal was not final at the time of his arrest. (ECF No. 8 at 5 n.2.) Approximately 14 days after Petitioner's arrest, Respondents moved to obtain an amended order of removal. (*See* ECF No. 8-1 at 2.) Therefore, even if the order of removal is now final, it could not have been final until at least the 45th day of likely unlawful detention. Respondents cannot cure a due process violation by unlawfully detaining Petitioner until their mandatory authority ripens.

of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. Petitioner has established a life in the United States over the last 22 years. Despite that, Petitioner has now been detained for over three months without notice or opportunity to be heard. (ECF No. 12-1 at 2.) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. Thus, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, Respondents assert there was no final order of removal at the time they detained Petitioner. (ECF No. 8 at 5 n.2.) Additionally, Respondents do not argue that Petitioner is a danger to the community or a flight risk. (*See generally* ECF No. 8.) Therefore, on this record, at the time Respondents detained Petitioner, they had no legitimate interest.

Moreover, the cost and time of procedural safeguards are minimal here.  Notice and custody hearings are routine processes for Respondents with minimal burden.  Indeed, these are the very processes that were owed to Petitioner under § 1226(a).  Any delay in re-detention (if justified) for time to provide notice and a hearing would have been minimal.  It is also less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him.  *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

In balancing the government's interest in effectuating immigration laws against the considerable potential for erroneous deprivation and Petitioner's strong liberty interest strengthened over 22 years (including 7 years since his order of removal), the Court finds that Petitioner was entitled to notice and a hearing at minimum.  Respondents did not provide either.  Nor did they provide a post-deprivation bond hearing as required under § 1226(a).  Thus, Petitioner has shown he is likely to succeed on his due process claim.

### iii.  Third-Country Removal

Petitioner argues that Respondents' third-country removal policy is unlawful and lacking due process.  (ECF No. 12 at 16–18.)  Numerous courts in this Circuit have held that ICE's third-country removal policy is unconstitutional and this Court agrees with those well-reasoned decisions.  *See, e.g.*, *Vu v. Noem*, No. 1:25-cv-01366-KES-SKO, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025); *Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *18–23 (W.D. Wash. Aug. 21, 2025); *Zakzouk v. Becerra*, No. 25-cv-06254-KAW, 2025 WL 2899220, at *4 (N.D. Cal. Oct. 10, 2025); *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *2–3 (W.D. Wash. Oct. 23, 2025).  Petitioner must be given time and opportunity to address fear of persecution.[6]

---

[6]   "Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999).  "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Nguyen v. Scott*, No. 2:25-cv-

While in custody, Respondents provided Petitioner with a notice of removal to Mexico, which is devoid of any substantive information including any information about claiming fear of persecution. (ECF No. 8-3.) At the time this matter was briefed, Petitioner had not been given a credible fear interview for removal to Mexico. (*See* ECF No. 8-1 at 2.) Accordingly, Petitioner may also succeed on a claim that he is not being afforded adequate due process related to third-country removal.

B.    Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his immigration proceedings. Additionally, if ICE follows their policy for Petitioner's removal to a third-country, he would have no meaningful opportunity to seek relief in any court before removal. Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, Petitioner has sufficiently established irreparable harm.

C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S.*

01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016)).

*Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Melendres*, 695 F.3d at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  Any burden imposed by requiring Respondents to comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer if he continues to be detained.  In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's request for injunctive relief and issues a TRO ordering Petitioner's immediate release on the same terms as he was released prior to his detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

### IV.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1.  Petitioner's request for injunctive relief, contained in his habeas petition and construed as a motion for temporary restraining order, is GRANTED.

2.  Respondents must IMMEDIATELY RELEASE Petitioner Vado C.G. from custody under the same conditions he was released prior to his current detention.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  **Respondents must file a notice certifying compliance with this provision of the Court's Order by February 12, 2026.**

3.  Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At

9

any such hearing, Petitioner shall be allowed to have counsel present.

4. Respondents are further ENJOINED AND RESTRAINED from removing Petitioner, unless they provide the following process:

    a. written notice to both Petitioner and Petitioner's counsel in a language Petitioner can understand;

    b. following the notice, Petitioner must be provided a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for protection under the Convention Against Torture prior to removal;

    c. if Petitioner is found to have demonstrated "reasonable fear" of removal to the designated country, Respondents must move to reopen Petitioner's immigration proceedings;

    d. if Petitioner is not found to have demonstrated a "reasonable fear" of removal to the country, Respondents must afford Petitioner a meaningful opportunity, and a minimum of fifteen days, to seek to reopen his immigration proceedings.

5. Now that Petitioner has Court-appointed counsel, Petitioner may supplement or amend his Petition for Writ of Habeas Corpus by **February 17, 2026**.

6. Respondents are ORDERED TO SHOW CAUSE why this Court should not grant the Petition for Writ of Habeas Corpus (and any filed supplement or amendment) and enter judgment in favor of Petitioner. Respondents shall file responsive papers by **February 23, 2026**. Petitioner may file a reply, if any, by **February 25, 2026**. **The parties shall indicate in their briefing whether they request a hearing**. The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule.

7. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: February 11, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE